In re Patti Jan MERSMANN, Debtor.

**Educational Credit Management Corporation, Appellant,**

v.

**Patti Jan Mersmann, Appellee.**

**BAP No. KS–04–018.
Bankruptcy No. 98–41940–13.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 14, 2004.

Craig R. Welling (Scott M. Browning with him on the brief) of Rothgerber Johnson & Lyons L.L.P., Denver, Colorado (N. Larry Bork of Goodell Stratton Edmonds & Palmer, L.L.P., Topeka, Kansas, with them on the brief), for the Appellant.

John R. Hooge, Lawrence, Kansas, for the Appellee.

Before CORNISH, MICHAEL, and THURMAN, Bankruptcy Judges.

## OPINION

THURMAN, Bankruptcy Judge.

Educational Credit Management Corporation (ECMC) timely appeals a final Judgment entered by the United States Bankruptcy Court for the District of Kansas discharging the debtor's student loan debt remaining unpaid after completion of her confirmed Chapter 13 Plan.[1] The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of

---

1. 28 U.S.C. § 158(a)(1); Fed. R. Bankr.P. 8002(a).

Kansas.[2] For the reasons stated below, the bankruptcy court's Judgment is AFFIRMED.

## I. *Background*

The debtor filed a Chapter 13 petition in June 1998. She scheduled ECMC's predecessor in interest (who will be referred to as "ECMC") as a general unsecured creditor, holding a claim for unpaid student loans.

The Chapter 13 Plan proposed by the debtor contained the following relevant provisions:

> GENERAL UNSECURED CREDI-TORS: Creditors with general unsecured claims will be paid any funds NOT NECESSARY TO SATISFY administrative expenses, priority, secured and special class claims within the initial 36 months of this Plan....
>
> Note— 10% of all general, unsecured creditors are to be paid through plan. Upon completion of plan and payment of said 10% of general, unsecured creditors, all remaining unsecured debts, including school loans that are non-dischargeable in chapter 7 cases, shall be discharged.[3]

The debtor served this Plan and the notice of confirmation hearing on ECMC. ECMC did not object to confirmation of the Plan despite the debtor's proposal to discharge a large portion of its otherwise nondischargeable student loan claim. During this same period of time, however, ECMC filed a proof of claim, asserting a general unsecured claim in the amount of $12,655.88.

On December 9, 1998, the bankruptcy court entered an Order confirming the debtor's Plan (Confirmation Order). ECMC, who was served with the Confir-mation Order, did not appeal it or timely request that it be revoked.

In February 1999, several months after her Plan was confirmed, the debtor filed a "Motion to Amend Plan" (Amendment Motion). The amendments she requested that are relevant to this appeal are as follows:

> SPECIAL CLASS CREDITORS: Two classes:
>
> (1) School loans that are non-dischargeable in chapter 7 case— to be treated as general unsecured creditors and as follows: 10% of all allowed general, unsecured creditors are to be paid through plan, after payment of allowed secured creditors. Upon completion of plan and payment of said 10% of allowed general, unsecured creditors, all remaining unsecured debts, including school loans that are otherwise non-dischargeable in chapter 7 cases, shall be discharged. Said completion of the plan shall result in a finding that it would be an undue hardship for the Debtor to have to pay any additional monies to the special class of school loans not otherwise dischargeable.
>
> ....
>
> GENERAL UNSECURED CREDI-TORS:
>
> ....
>
> (2) 10% of all allowed general, unsecured creditors are to be paid through plan, after payment of allowed secured creditors. Upon completion of plan and payment of said 10% of allowed general, unsecured creditors, all remaining unsecured debts, including school loans that are otherwise non-dischargeable in chapter 7 cases, shall be discharged. Said completion of the plan shall result in a

---

**2.** 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

**3.** Chapter 13 Plan at 1–2, Appellant's Appendix at 450–51.

finding that it would be an undue hardship for the Debtor to have to pay any additional monies to the special class of school loans not otherwise dischargeable.

. . . .

*SPECIAL NOTES:*

If there is a special class for which 100% payment is not proposed, it is the intention and understanding of the debtor(s) that any remaining balance for any claim in this class is discharged upon completion of the plan.[4]

Through these amendments, the debtor did not propose to alter the treatment of ECMC's claim. As in her confirmed Plan, she proposed to pay 10% of ECMC's allowed claim through the Plan and then discharge any amount unpaid at the end of the Plan's term. The difference in the requested amendments was to create "a finding" of "undue hardship" under § 523(a)(8) upon completion of the Plan.[5]

The Amendment Motion and notice of that Motion were served on ECMC. Despite the debtor's express statements regarding the dischargeability of her unpaid student loans, ECMC did not object to the Amendment Motion. In fact, no responses to the Amendment Motion were filed, and on May 25, 1999, the bankruptcy court entered an Order Granting Motion to Amend Plan (Amendment Order).

The debtor completed payments required under her Amended Plan in 2003.

ECMC was paid approximately $2,219.00 through the Amended Plan. On June 2, 2003, the bankruptcy court entered a "Discharge Order," granting the debtor a discharge pursuant to § 1328(a). Contrary to the Amended Plan, the Discharge Order states, in accordance with § 1328(a), that the debtor's unpaid student loan debt was exempt from discharge.

In September 2003, years after the bankruptcy court entered its Confirmation Order and Amendment Order and several months after entry of the Discharge Order, ECMC filed a motion to amend the Confirmation Order and the Amendment Order pursuant to Federal Rule of Civil Procedure 60(b) to omit the provisions discharging the debtor's unpaid student loan debt (ECMC Rule 60(b) Motion).[6] The debtor objected to the ECMC Rule 60(b) Motion, and moved to amend the Discharge Order pursuant to Federal Rule of Civil Procedure 60(a) to recognize the discharge of her unpaid student loans authorized in the Confirmation Order and Amendment Order (Debtor Rule 60(a) Motion).[7] ECMC objected to the Debtor Rule 60(a) Motion.

The bankruptcy court, denying the ECMC Rule 60(b) Motion and granting the Debtor Rule 60(a) Motion, entered Judgment in favor of the debtor. In a separate Memorandum and Order, it concluded that the portion of student loan debt not paid to ECMC through the debtor's Amended Plan was discharged.[8] This appeal fol-

---

**4.** Amendment Motion at 2–3, Appellant's Appendix at 460–61.

**5.** Unless otherwise stated, all statutory references in the text are to title 11 of the United States Code.

**6.** Federal Rule of Civil Procedure 60(b) is made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024.

**7.** Federal Rule of Civil Procedure 60(a) is made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024.

**8.** *Educ. Credit Mgmt. Corp. v. Nelson (In re Mersmann),* 305 B.R. 42 (Bankr.D.Kan.2004). This Memorandum and Order contains findings of fact and conclusions of law related to the Judgment entered in the debtor's case, captioned above, as well the Judgments entered in three other Chapter 13 cases involving the similar facts and issues. *Educ. Credit*

lowed.[9]

## II. *Discussion*

 Section 523(a)(8) states that student loan debts are nondischargeable, unless excepting them from discharge "will impose an undue hardship on the debtor and the debtor's dependents."[10] This provision is expressly "self-executing" and, therefore, "[u]nless the debtor affirmatively secures a[n undue] hardship determination," the student loan debt is excepted from discharge.[11] To obtain an "undue hardship" determination under § 523(a)(8), the debtor must file a complaint against the holder of the student loan debt, and prove "undue hardship" by a preponderance of the evidence.[12]

 While these procedures for obtaining a § 523(a)(8) "hardship discharge" are

well-established,[13] some Chapter 13 debtors (such as the debtor in this case, the debtors in the Related Debtors Cases, and numerous others)[14] have attempted to circumvent them by obtaining confirmation of plans containing provisions discharging student loans at confirmation or completion. These debtors contend that such plan provisions are supported and advised by *Andersen v. UNIPAC–NEBHELP (In re Andersen)*.[15] In *Andersen*, the Court of Appeals for the Tenth Circuit applied principles of *res judicata* and policies favoring finality of confirmation orders to uphold an uncontested plan provision discharging a student loan debt as an "undue hardship," even though the Chapter 13 debtor never established "undue hardship" in an adversary proceeding. Although *Andersen* prohibits holders of student loans from collat-

*Mgmt. Corp. v. Boyer (In re Boyer)*, Bankr.No. 96–42993–13, Adv. No. 02–7141, 2004 WL 2896940 (Bankr.D.Kan.); *In re Seiwert*, Bankr.No. 96–43032–13, 2004 WL 2896942 (Bankr.D.Kan); *Educ. Credit Mgmt. Corp. v. Nelson (In re Nelson)*, 318 B.R. 532, 2004 WL 2896631 (Bankr.D.Kan.) [hereinafter referred to collectively as the "Related Debtors Cases"].

9. ECMC also appealed the Judgment entered by the bankruptcy court in each of the Related Debtor Cases. Those appeals are disposed of by separate Orders and Judgments because they are factually distinct from the appeal in this debtor's case. *See Educ. Credit Mgmt. Corp. v. Boyer (In re Boyer)*, BAP No. KS–04–015, 2004 WL 2896940 (10th Cir. BAP filed Dec. 14, 2004); *In re Seiwert*, BAP No. KS–04–016, 2004 WL 2896942 (10th Cir. BAP filed Dec. 14, 2004); *Educ. Credit Mgmt. Corp. v. Nelson (In re Nelson)*, 318 B.R. 542, 2004 WL 2896631 (10th Cir. BAP 2004).

10. 11 U.S.C. § 523(a)(8); *see id* § 1328(a)(2) (discharge under § 1328(a) applies to debts except those of the kind specified in § 523(a)(8).)

11. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S.Ct. 1905, 1912, 158 L.Ed.2d 764 (2004).

12. Fed. R. Bankr.P. 4007(a)-(b) (debtor entitled to file a complaint to determine dischargeability of a debt at any time) & 7001(6) (dischargeability of debt determined in adversary proceeding); *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185, 1189 (10th Cir.2004) (adversary proceeding required, and debtor has burden to prove "undue hardship"); *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1256 (10th Cir.1999) (same); *see generally Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302 (10th Cir.2004) (discussing elements of "undue hardship"); *In re Woodcock*, 45 F.3d 363 (10th Cir.1995) (debtor has burden to prove "undue hardship"); *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 308 B.R. 495 (10th Cir. BAP 2004) (discussing elements of "undue hardship," and debtor has burden of showing by preponderance of the evidence).

13. *See, e.g., Andersen*, 179 F.3d at 1256 ("a debtor must normally prove undue hardship by bringing an adversary proceeding directed to that issue"), *quoted in Poland*, 382 F.3d at 1187; *see generally supra* n. 12 (citing controlling case law).

14. *See supra* n. 8.

15. 179 F.3d 1253 (10th Cir.1999).

erally attacking certain confirmed plans improperly discharging student loan debt, it is *not* a tool for Chapter 13 debtors to surreptitiously obtain a hardship discharge by confirmation.

■ *Andersen* was a case of first impression that, while decided on preclusion principles, made very clear the court's recognition of the mandate in § 523(a)(8) severely limiting the discharge of student loan debt and of the need for debtors to prove "undue hardship" after filing an adversary proceeding. As pointed out by the Tenth Circuit in its more recent case, *Poland v. Educational Credit Management Corp. (In re Poland),*[16] *Andersen* is expressly limited to "the particular facts of [that] case."[17] *Andersen* can in no way be read to advise that its limited holding be used by Chapter 13 debtors as a sword to obtain hardship discharges through the plan confirmation process. Hardship discharge provisions inserted in Chapter 13 plans after *Andersen* was issued find little support from that case. Indeed, through *Poland*[18] and the holding herein, Chapter 13 debtors are considered warned that the insertion of "undue hardship" findings in a plan or confirmation order, or any order amending the plan or confirmation order, is never appropriate and may be grounds for setting such findings aside and/or sanctions.[19]

■ That being said, we now turn to the merits of this case. In so doing, we agree with the bankruptcy court that: "After a careful reading of *Andersen,* this Court cannot fairly distinguish it from the facts of [the debtor's case], and therefore finds that ECMC is precluded from now attacking the confirmation order[ ] . . . ."[20] As in *Andersen,* the discharge provision in the debtor's Amended Plan is an express finding of "undue hardship" that, pursuant to the Amendment Order, "constitutes a binding adjudication of hardship" upon completion of the Plan.[21] Accordingly, as ECMC acknowledges, *Poland,*[22] which states that hardship discharge provisions in confirmed plans are not binding absent an express "finding" of "undue hardship," does not compel reversal of the bankruptcy court's Judgment in this debtor's case.[23]

The only factual distinction between this case and *Andersen* is that the "finding" of "undue hardship," so crucial under *Poland,* was made in a post-confirmation modification to the debtor's confirmed Plan.[24] This

---

**16.** 382 F.3d 1185, 1188 (10th Cir.2004).

**17.** 179 F.3d at 1260.

**18.** 382 F.3d at 1189.

**19.** *See e.g.,* 11 U.S.C. § 1330(a); Fed.R.Civ.P. 60(b)(3) & (b)(6); Fed. R. Bankr.P. 9011; *see also In re Green,* 287 B.R. 827 (D.Kan.2002)(sanctions for inserting discharge provisions determined on a case by case basis); *In re Gardner,* 287 B.R. 822 (D.Kan.2002) (same); *In re Wright,* 279 B.R. 886 (D.Kan.2002) (same); *In re Lemons,* 285 B.R. 327 (Bankr.W.D.Okla.2002) (Rule 9011 sanctions imposed for inserting discharge provisions in plans); *In re Hensley,* 249 B.R. 318 (Bankr.W.D.Okla.2000) (inserting discharge provisions in plans violates counsel's ethical obligations as officers of the court).

**20.** *Boyer,* 305 B.R. at 49. The debtor's original Plan was confirmed and the Amendment Motion was granted before *Andersen* was decided.

**21.** 179 F.3d at 1256; *compare Poland,* 382 F.3d at 1185.

**22.** 382 F.3d at 1185.

**23.** *See, e.g. and compare* Related Debtors Cases cited *supra* nn. 8–9.

**24.** *See Poland,* 382 F.3d at 1185. The debtor's original Plan was much like the Chapter 13 plan in *Poland*—it declared that the otherwise nondischargeable student loan debt would be discharged upon plan completion, but it did not make a "finding" of "undue hardship." Under *Poland,* therefore, the

distinction, however, is without a difference.

Post-confirmation plan modifications are governed by § 1329, and under § 1329(b), "[t]he plan as modified becomes the plan . . . ." [25] Thus, the provisions of a modified plan have the impact of a confirmed plan: they "bind the debtor and each creditor . . . ." [26] Although bankruptcy courts have no authority to modify a confirmed plan to include "undue hardship" findings,[27] this fact has no bearing in applying the *Andersen* preclusion analysis. This point is borne out by the following passage in *Andersen:*

> The essence of ECMC's argument is that, despite the repeated failures of HEAF to protect its interests, the Bankruptcy Court exceeded its authority in confirming a plan that contained provisions which were contrary to the Code. . . . Without a judicial finding of such hardship at the close of an adversary proceeding, ECMC contends that the student loans cannot be discharged. We disagree. While Andersen surely had the burden of proving undue hardship, and while a discharge granted without such proof is inconsistent with the Code,[8] it is critical that HEAF, as the party affected by this determination, failed to properly challenge the language at issue, the interim rulings of the bankruptcy court, or the confirmed plan. As we discussed above, it is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result. We echo the wisdom of the Third Circuit that, "[w]hile we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the . . . plan rested with [HEAF], not with the bankruptcy court or the trustee." *In re Szostek,* 866 [886]F.2d at 1414.

> [8] For the reasons stated below, a confirmed plan, or any provision thereof, is not rendered void merely because a certain provision of the plan may be inconsistent with, or even contrary to, the Code.

> . . . .

> While Andersen did not properly prove undue hardship pursuant to the requirements of the Code, we agree with the Third Circuit that, "after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code." *In re Szostek,* 886 F.2d [1405]at 1406 [(3rd Cir.1989)]. As the court recognized in *In re Mammel,* 221 B.R. 238, 240 (Bankr.N.D.Iowa 1998), "[r]eviewing courts have been troubled by the tension created by inclusion of arguably inappropriate plan provisions and the need for finality in confirmed plan. . . . Most courts ultimately defer to the doctrine of res judicata because of the compelling need for finality in confirmed plans. They, therefore, enforce offending plan provisions even though acknowledging that a provision may be contrary to the Code. . . ."

> Moreover, we have recently said that, "[u]pon becoming final, the order confirming a chapter 13 plan represents a

debtor's original Plan would not have served to discharge her unpaid student loans.

**25.** 11 U.S.C. § 1329(b)(2).

**26.** *Id.* § 1327(a).

**27.** *See id.* § 1329(a)-(b)(1).

binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is res judicata and its terms are not subject to collateral attack."[9]

> 9 The amicus [curiae] argues that "we are not faced with a collateral attack on the confirmation order, but a direct attack on the confirmation order entered in a fashion which exceeds the bankruptcy court's authority." We disagree. HEAF failed to appeal the confirmation order [and] ... ECMC's present attack is a collateral attack on the confirmation order. . . .[28]

ECMC contends that the Confirmation Order and the Amendment Order are void under Federal Rule of Civil Procedure 60(b)(4) because, by failing to be served with a summons in an adversary proceeding, it was denied due process. This argument is without merit because, as correctly determined by the bankruptcy court, it was rejected in *Andersen*.[29] Notice of the confirmation proceedings and the Amendment Motion under Federal Rule of Bankruptcy Procedure 2002 was sufficient to afford ECMC due process.[30] ECMC's due process argument is especially hollow in this case because not only did it fail to object to the offensive discharge provision in the original Plan, but it also failed to object to the later Amendment Motion. Thus, ECMC was given two chances to protect its rights, but failed to do so.[31] For the very same reasons stated in *Andersen*, ECMC cannot complain given its "complete failure to properly protect its interests during the course of the bankruptcy proceedings."[32]

ECMC maintains that we should not follow *Andersen* because it has been called into question by *Tennessee Student Assistance Corp. v. Hood*[33] and in *Poland*. This argument is without merit because *Andersen* has not been overruled by *Hood* or *Poland* and, therefore, we must apply it as controlling law.

*Hood* holds that a Chapter 7 debtor's adversary proceeding against a State, seeking a hardship discharge under § 523(a)(8), is not a "suit" against the State to which Eleventh Amendment sovereign immunity applies. *Andersen* is not cited in *Hood*, and *Hood* in no way deals with the issue raised in *Andersen*. By bringing suit against the State, the debtor in *Hood* was following the established procedures for obtaining a § 523(a)(8) hardship discharge and, being in Chapter 7, obviously did not have a confirmed Chapter 13 plan discharging student loan debt as an "undue hardship." While, as we

---

**28.** 179 F.3d at 1257–58, and nn. 8 & 9.

**29.** *See Poland*, 382 F.3d at 1189 n. 2 (acknowledging that due process argument was decided in *Andersen* because it states that *Andersen* was "wrongly decided" inasmuch as preclusion principles could not apply given the breach of due process) (citing *Banks v. Sallie Mae Serv. Corp. (In re Banks)*, 299 F.3d 296 (4th Cir.2002)).

**30.** *Andersen*, 179 F.3d at 1256 n. 6; *see Hood*, 124 S.Ct. at 1914 (suggesting that, but for Federal Rule of Bankruptcy Procedure 7001(6), a debtor could bring a request for an undue hardship determination under § 523(a)(8) by motion "which would raise no constitutional concern."); *see generally Mul-*

*lane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (due process is afforded with notice reasonably calculated, under all circumstances, to apprise interested parties of the action and opportunity to object).

**31.** As pointed out *supra* in n. 24, if the Amendment Motion had not been granted, the discharge provision in the original Plan would not have been "a binding adjudication of undue hardship" to discharge the debtor's student loans. *Poland*, 382 F.3d at 1188; *see supra* nn. 8–9 (Related Debtors Cases).

**32.** *Andersen*, 179 F.3d at 1260.

**33.** 124 S.Ct. at 1905.

have acknowledged, *Hood* states that a bankruptcy discharge does not include student loan debt "[u]nless the debtor affirmatively secures a hardship determination"; this statement does not in any way overrule *Andersen.*[34]

*Poland* severely criticizes *Andersen,* stating that it was "wrongly decided and should be reconsidered."[35] But, as implicitly recognized by the Panel in that case, it is well-established that one Panel of the Tenth Circuit cannot overrule a decision of another Panel.[36] Until *Andersen* is expressly overruled by the United States Supreme Court, withdrawn by the Tenth Circuit or reconsidered by the Tenth Circuit *en banc* and overruled,[37] it is the binding law of this Circuit, and we must apply it, unless it can be distinguished.[38]

As discussed above, there is no basis on which to distinguish *Andersen* from this case and, therefore, the bankruptcy court's Judgment must be affirmed.

■ Finally, we conclude that the bankruptcy court did not abuse its discretion in granting the Debtor Rule 60(a) Motion to conform the Discharge Order to the Confirmation Order and the Amendment Order.[39] The Discharge Order, a form Order that was "automatically generated by the Clerk of the Bankruptcy Court,"[40] was clearly at odds with the Confirmation Order and the Amendment Order (collectively referred to in this discussion as the "Confirmation Order")—the Confirmation Order discharges the debtor's student loan debt, and the Discharge Order excepts it from discharge. At the time that the Dis-

34. 124 S.Ct. at 1912. While we remain firm that the proper way for a debtor to obtain a § 523(a)(8) hardship discharge is by filing an adversary proceeding and proving "undue hardship" by a preponderance of the evidence, *see* discussion *supra* at 541 and accompanying notes, we note that the Court in *Hood* suggested, in a wholly different context, that § 523(a)(8) does not require the commencement of an adversary proceeding. *Id.* at 1914 ("The text of § 523(a)(8) does not require a summons, and absent Rule 7001(6) a debtor could proceed by motion … which would raise no constitutional concern.… To conclude that the issuance of a summons, which is required only by the Rules, precludes Hood from exercising her statutory right to an undue hardship determination would give the Rules an impermissible effect. 28 U.S.C. § 2075.")

35. *Poland,* 382 F.3d at 1189 n. 2. There is currently a split in the Circuits regarding the ability to discharge student loans through plan confirmation. *Compare Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 193 F.3d 1083 (9th Cir.1999) (discharging debt); *Andersen,* 179 F.3d at 1253 (same); *with Banks,* 299 F.3d at 296 (refusing to discharge debt); *see In re Repp,* 307 B.R. 144 (9th Cir. BAP 2004) (questioning application of *Pardee* ).

36. *See, e.g., In re Smith,* 10 F.3d 723, 724 (10th Cir.1993); *see also United States v. Meyers,* 200 F.3d 715, 720 (10th Cir.2000).

37. *See, e.g., Meyers,* 200 F.3d at 722 n. 3, *quoted in Cannon v. Gibson,* 259 F.3d 1253, 1266 (10th Cir.2001); *Murphy v. Klein Tools, Inc.,* 935 F.2d 1127, 1128 n. 2 (10th Cir. 1991).

38. To a certain extent, we are sympathetic to ECMC's argument that Fed. R. Bankr.P. 7001(6) requires the filing of an adversary proceeding to obtain an "undue hardship" determination under § 523(a)(8), notwithstanding the discharge language "slipped in" by the debtor and arguments of res judicata. *See Poland,* 382 F.3d at 1189 n. 2. We are compelled, however, to follow *Andersen* absent additional direction from the Court of Appeals. *See, e.g., Haynes v. Williams,* 88 F.3d 898, 900 n. 4 (10th Cir.1996) (when faced with conflicting decisions, "a panel should follow earlier, settled precedent over a subsequent deviation therefrom.")

39. *See, e.g., McNickle v. Bankers Life & Casualty Co.,* 888 F.2d 678, 682 (10th Cir.1989) (reviewing Rule 60(a) order for abuse of discretion).

40. *Boyer,* 305 B.R. at 54.

charge Order was entered, the debtor's student loan debt had been discharged. The bankruptcy court's decision, refusing to make the already discharged debt non-dischargeable by the form Discharge Order, was not erroneous. The Discharge Order, one of 1,100 form orders automatically generated by the clerk of the bankruptcy court, was not deliberately made, and it did not reflect the intent of the parties or the bankruptcy court reflected in the more specific Confirmation Order.[41] Accordingly, we do not have "a definite and firm conviction that the [bankruptcy] court made a clear error of judgment or exceeded the bounds of permissible choice" in granting the Debtor Rule 60(a) Motion.[42]

### III. *Conclusion*

The bankruptcy court's Judgment is AFFIRMED.

### JUDGMENT

This case originated in the United States Bankruptcy Court for the District of Kansas at Topeka.

The judgment of that court is AFFIRMED.

---

41. *Id.* at 54 & n. 33; *see generally In re Craddock,* 149 F.3d 1249, 1254 n. 4 (10th Cir.1998) (Rule 60(a) may be used to correct nondeliberate errors in orders that do not reflect the intent of the court; the correction should not require additional proof); *McNickle,* 888 F.2d at 682 (same).

42. *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (citation and quotation omitted).